UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FLAVIO MORENO,<br><br>           Plaintiff,<br><br>v.<br><br>KIM ADAMSON, *et al.,*<br><br>           Defendants. | 3:19-cv-0330-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Flavio Moreno ("Moreno") against Defendants Romeo Aranas, Russelle Donnelly, Brian Egerton, Kim Adamson and Michael Minev (collectively referred to as "Defendants"). Currently pending before the court is Moreno's motion for preliminary injunction. (ECF No. 21.) Defendants responded (ECF Nos. 23, 25, 28, & 29),[2] and no reply was filed. Having thoroughly reviewed the record and papers, the court recommends that Moreno's motion for preliminary injunction (ECF No. 21) be denied.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Moreno is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Lovelock Correctional Center ("LCC") in Lovelock, Nevada. (ECF No. 4.) On June 17, 2019, Moreno submitted his initial complaint and an application to proceed *in forma pauperis.* (ECF Nos. 1, 1-1.)

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF Nos. 25 & 29 consist of sealed documents filed in support of Defendants' opposition. ECF No. 28 is an errata identifying the sealed documents in ECF No. 29.

In his complaint, Moreno alleges the following: In 2006, while in custody in a federal prison, Moreno was diagnosed with Hepatitis C ("Hep-C"). (*Id.* at 4.) In 2010, Moreno began his term in NDOC custody. (*Id.*) Moreno informed medical staff at High Desert State Prison ("HDSP") that he had been diagnosed with Hep-C, and medical staff confirmed that diagnosis with a test. (*Id.*)

Moreno immediately began requesting treatment for his Hep-C and made multiple requests for treatment while housed in HDSP. (*Id.* at 5.) Moreno's requests were all denied or ignored. (*Id.*) In August 2015, Moreno was transferred to LCC. (*Id.* at 6.) Moreno told intake nurse Brian Egerton that he suffered from Hep-C and that he had a number of severe symptoms, including vomiting, sharp pains, frequent dark urination, and lethargy. (*Id.*) Shortly thereafter Adamson saw Moreno regarding his Hep-C. (*Id.* at 7.) Moreno requested treatment, but Adamson denied the request due to budgetary concerns. (*Id.*) Adamson told Moreno that he would only receive treatment once his Hep-C reached the advanced stage of causing fibrosis or cirrhosis. (*Id.*)

In June 2016, Adamson performed lab work on Moreno. (*Id.*) The lab work showed that Moreno was experiencing continuous liver damage. (*Id.*) Adamson explained that there were several new drugs that could cure his Hep-C, but, due to budgetary constraints, he would not recommend them until Moreno's liver damage reached the advanced stage of fibrosis or cirrhosis. (*Id.*) Adamson told Moreno that if Moreno were in the free world, rather than in NDOC custody, Adamson would immediately prescribe him the new medication to cure his Hep-C. (*Id.*)

On numerous occasions, Donnelly told Moreno, "you infected yourself with Hep-C and you expect the tax-payers of Nevada to pay for your cure now." (*Id.* at 9.) On November 26, 2018, Moreno submitted a grievance based on the failure to treat his Hep-C. (*Id.*) Since November 2018, Moreno has filed multiple kites requesting treatment, and his kites have all been denied. (*Id.* at 9-11.)

Pursuant to 28 U.S.C. § 1915A(a), the District Court screened the complaint on April 13, 2020. (ECF No. 3.) Based on the allegations in the complaint, the Court

determined Moreno could proceed on one claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants. (*Id.*)

## II.     Moreno's Motion for Preliminary Injunction

On December 1, 2020, Moreno filed a motion for preliminary injunction. (ECF No. 21.) In the motion, Moreno requests the court issue a preliminary injunction directing Defendants immediately provide him with direct acting anti-viral ("DAA") drug, i.e., Harvoni, to treat his Hep-C. (*Id.* at 2.) Moreno argues that if this relief is not ordered, his Hep-C may lead to "liver stiffness," "liver inflammation," which "could lead to cirrhosis or even death." (*Id.* at 3.)

In response, Defendants argue that a preliminary injunction is inappropriate because: (1) Moreno cannot demonstrate he will suffer irreparable injury without immediate treatment; (2) Moreno cannot establish a strong likelihood that he will succeed on his claim; and (3) the new NDOC policy related to Hep-C treatment and Consent Decree render Moreno's motion moot because he will receive treatment the DAA treatment pursuant to this new policy and the Consent Decree. (ECF No. 23.)

## II.     LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must cons*Id*er the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (quotation marks and citation omitted). The instant motion requires the Court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities

3

tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "slidng-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued val*Id*ity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51; *see also Alliance*, 632 F.3d at 1131. The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test survives when applied as part of the four-element *Winter*'s test. *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* (citations omitted). The portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009).

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Committee of Cent. American Refugees v. Immigration & Naturalization Service*, 795 F.2d 1434, 1442 (9th Cir. 1986). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740

(9th Cir. 2015) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. §3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III.   DISCUSSION

Having reviewed Moreno's filings with the above-cited principles in mind, it is clear that Moreno has not made the showing required for an injunction to issue.

First, Moreno has not shown he will suffer irreparable harm if he does not receive DAA treatment immediately. *See Winter*, 555 U.S. at 20. The only records provided by Moreno related to his Hep-C are dated from 2018 and 2019 – over a year before this motion was filed – which provide only inmate request forms or kites. (ECF No. 21 at 9-11). These records do not provide any updated information related to Moreno's present Hep-C condition, treatment, or status. However, Moreno's treatment progress notes, provided by Defendants, reveals that during this same time frame Moreno's APRI scores, which provides some indication of liver function, were fairly low and that he was clearly given regular blood draws to monitor his condition. (ECF Nos. 25-1; 25-2; 29-1).

As such, Moreno has failed to provide evidence to the court which would establish that he will suffer irreparable harm if he is not provided DAA treatment immediately.

Moreover, Moreno's request for treatment is moot because he is currently in line to receive DAA treatments. First, NDOC Medical Directive ("MD") 219 was recently updated to provide that all inmates who test positive for Hep-C will be treated with DAAs (unless certain conditions apply.) (ECF No. 23-1). Therefore, pursuant to MD 219, Moreno will receive DAA treatments pursuant to MD 219.

In addition, in 2020 a Consent Decree was entered by this court, which settled a class action lawsuit related to Hep-C treatments in the NDOC. (ECF No. 23-3). Pursuant to the Consent Decree, all current and future NDOC inmates within NDOC custody who have a been diagnosed with Hep-C and who have a certain period of time remaining on their sentence, are eligible for DAA treatments. (*Id.*) The treatment will be provided in order of priority based on determinations related to various factors specific to each inmate. (*Id.*) The Consent Decree also requires that the DAA treatment must be provided within certain time frames from the entry of the decree. (*Id.*) Based on MD 219 and the Consent Decree, Moreno is eligible for, and will receive, DAA treatment in order of priority with all other NDOC inmates who have tested positive for Hep-C in due course.

Having found that Moreno has not made the requisite showing that he is likely suffer irreparable harm if not immediately provided DAA treatment and that Moreno will be receiving DAA treatment pursuant to the Consent Decree based on his priority level, the court concludes that a preliminary injunction is not warranted.

**IV.   CONCLUSION**

Based upon the foregoing, the court recommends that Moreno's motion for preliminary injunction (ECF No. 21) be denied.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled

"Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Moreno's motion for preliminary injunction (ECF No. 21) be **DENIED**.

**DATED**: February 12, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**